# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF CONNECTICUT

-----------------------------------------------------------x

UNITED STATES OF AMERICA,

               Plaintiff

vs.

CRIMINAL MATTER
No. 3:03CR-198 (RNC)

ANTONIO MARRERO,

               Defendant

March 1, 2006

-----------------------------------------------------------x

## DEFENDANT ANTONIO MARRERO'S MEMORANDUM IN AID OF SENTENCING

Defendant Antonio (Ramon) Marrero, in the above captioned criminal matter, through counsel, respectfully provides to the Court his Memorandum in aid of sentencing in this case. This Memorandum is to be considered by the Court in conjunction with any comments or objections or both made by the defendant previously in this case.

**Background**

On March 7, 2005, defendant entered a plea of guilty to Count One of the Indictment in this case charging Mr. Marrero with conspiracy to possess with the intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§846, 841(a)(1), and 841(b)(1)(A)(i). At the time of Mr. Marrero's plea, defendant entered his plea of guilty pursuant to a written

plea agreement.  At the time of defendant's guilty plea, the Court initially assigned the sentencing hearing in his case for June 3, 2005.  The sentencing hearing is now scheduled for Friday, March 3, 2006.

Ramon Marrero has been detained continuously since the date of his arrest on July 24, 2003.  Mr. Marrero's guilty plea was the culmination of negotiations between the government and defendant since the time of his arrest.  After careful consideration of the plea agreement he had been offered, the application of the sentencing guidelines, and the factual background of his case, Mr. Marrero elected to enter his plea of guilty in this case. After his plea and prior to one date for his sentencing hearing, another and different plea was discussed between the defendant and the government to accommodate an apparent change in Second Circuit law.  That change ultimately was abandoned and the parties have proceeded as originally contemplated.

Ramon Marrero was one of the first defendants to advise the government of his interest in resolving the charges against him in this case.  While the defendant and the government explored the possibility of cooperation in his case, no legitimate opportunity existed or developed for Mr. Marrero.

The United States Probation Office made the first disclosure of its Presentence Report in this case on or about August 26, 2005.  Mr. Marrero participated in the preparation of the Report and spoke openly with Probation Officer Joseph Montesi about his past, including his criminal history, with the assistance of a Spanish interpreter. Defendant believes that the calculations performed by the Probation Office are accurate and based on an adequate foundation.  Neither Mr. Marrero, nor defense counsel for Mr. Marrero had objection to those findings or to the factual contents concerning Mr. Marrero's background.

**Standards for Departure Under United States Sentencing Guidelines**

The Sentencing Reform Act of 1984 provided for the development of guidelines that would be applicable in the Federal sentencing process. The Act's basic objective was to enhance the ability of the criminal justice system to combat crime through an effective, fair sentencing system. Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders. Congress also sought proportionality in sentencing through a system that imposed appropriately different sentences for criminal conduct of differing severity. *USSG*, Chapter One, Part A, Introduction and General Application Principles.

In imposing sentence, the sentencing court determines facts relevant to sentencing by a preponderance of the evidence, *United States v. Navarro*, 979 F.2d 786, 788 (9th Cir. 1992) (citing *United States v. Restrepo*, 946 F.2d 654, 655-57 (9th Cir. 1991) (en banc), *cert. denied*, 502 U.S. 850, 112 S. Ct. 154, 118 L.Ed.2d 211 (1992)). Under the Federal Sentencing Guidelines the defendant bears the burden of proving the appropriateness of a downward departure. *United States v. Anders*, 956 F.2d 907, 911 (9th Cir. 1992) (citing *United States v. Howard*, 894 F.2d 1085, 1089-90 (9th Cir. 1990)), *cert. denied*, 507 U.S. 989, 113 S.Ct. 1592, 123 L.Ed.2d 158 (1993).

Under U.S. Sentencing Guidelines §6A1.3, the district court must give the parties an adequate opportunity to present information regarding disputed facts and the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial provided that the information has the sufficient indicia of reliability to support its probable accuracy. The Sentencing Guideline Manual permits the sentencing court to determine the appropriate procedure to resolve contested factual disputes but

3

requires the sentencing court to tailor its process to the nature of the dispute, its relevance to the sentencing determination and application case law. USSG §6A1.3 (Commentary).

In addition, 28 U.S.C. §994 (Duties of the Commission) provides for the charter of the United States Sentencing Guideline Commission. 28 U.S.C. §994(j) is particularly relevant to this case. Section (j) provides:

> "The commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first time offender who has not been convicted of a crime of violence. . ." 28 U.S.C. §994(j).

A "sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. §5K2.0 (quoting 18 U.S.C. §3553(b)). The Appellate Court applies a "clearly erroneous" standard to a district court's factual findings with respect to sentencing and review a district court's decision to depart from the applicable guideline range for abuse of discretion. *United States v. Payton*, 159 F.3d 49, 61 (2d Cir. 1998). The test for abuse of discretion is:

> whether the circumstances relied upon to justify a downward departure are so far removed from those found exceptional in existing case law that the sentencing court may be said to be acting outside permissible limits; then, and only then, should we rule that it has misused its discretion. *United States v. Galante*, 111 F.3d 1029, 1036 (2d Cir. 1997).

Finally, "if there is no clear error in the district court's factual findings and no error in its conclusion that the factor is a permissible ground for departure, . . . we review the

4

resulting sentence to determine whether or not it is reasonable." *Id.* (internal citations omitted).

Finally, in the discussion of Departures in Part 4(b) of the Introduction, the Commission asserts that courts should treat each guideline as "carving out a 'heartland,' a set of typical cases" and that, "when a court finds an atypical case," that "significantly differs from the norm, the court may consider whether a departure is warranted." *See, e.g., United States v. Rogers*, 972 F.2d 489 (2d Cir. 1992). This discussion goes on to assert that (apart from a few enumerated factors that may not serve as a ground for departure), "the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the Guidelines, that could constitute grounds for departure in an unusual case." Manual, Ch. 1, Pt. A, intro. comment 4(b) (Policy Statement). By way of explanation of the need for departures, the Commission stresses the difficulty of prescribing "a single set of guidelines that encompass the vast range of human conduct potentially relevant to a sentencing decision." *Id.*

To be sure, the ensuing discussion makes clear that the Commission expects the departure power to be sparingly used, and reserved for unusual cases. At the same time, however, the overall treatment makes clear that departure in the appropriate case is essential to the satisfactory functioning of the sentencing system. *See* Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers,* 101 Yale L.J. 1681, 1694, 1730-31 (1992).

### *United States v. Booker*

Since Mr. Marrero is being sentencing after the decision of the United States Supreme Court in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed2d 621

(2005),[1] that decision is controlling upon the manner in which sentence is imposed in his case. Prior to the decision in *Booker*, sentences in federal court were imposed based upon the mandates of the United States Sentencing Guidelines. But the *Booker* Court held that the sentencing guidelines violated the Sixth Amendment to the United States Constitution by requiring judges to impose sentences based on facts not found by a jury beyond a reasonable doubt or admitted by the defendant. *United States v. Booker, supra*, 125 S.Ct. at 756; *United States v. Brady*, 417 F.3d 326, 332 (2d Cir. 2005). "As a remedy to this constitutional violation, the Court ruled that district court judges need no longer mandatorily apply the federal Sentencing Guidelines in calculating defendants' sentences and made the Guidelines system advisory." *Id.*; *United States v. Booker, supra*, 125 S.Ct. at 756-57.

While the Guidelines are no longer mandatory, the sentencing court must nonetheless consider the applicable Guidelines sentence and relevant policy statements before sentencing. *See United States v. Crosby*, 397 F.3d 103, 111 (citing 18 U.S.C. §3553(a)(4) and *Booker*, 125 S.Ct. at 764-65)." *Id.* In this new, post-*Booker* regime, the Court must continue to calculate the Guidelines sentence as it would before *Booker*, and must take into account any and all relevant permissible bases for departures. *United States v. Crosby, supra*, 397 F.3d at 111-12. On review, the ultimate determination will be focused upon whether or not, in light of all of the factors involved and available for consideration by the sentencing court, the sentenced imposed was "reasonable."

**Downward Departures Generally**

In the Introductory Commentary to Chapter 5, Part H – Specific Offender Characteristics, the sentencing guidelines outline policy statements for consideration by the

---

[1]      *United States v. Booker, supra*, specifically excises §3742(e) from federal sentencing law and instructs that sentences will be reviewed on appeal only for "reasonableness." At the same time, the reasonableness of a sentence, even under the discretionary regime recognized in *Booker*, will depend in part on the sentencing court's consideration of the Sentencing Guidelines. See 18 U.S.C. §3553(a)(4)-(5); *United States v. Canova*, 412 F.3d 331, 335 (2d Cir. 2005).

court in determining "the nature, extent, place of service, or other incidents of an appropriate sentence." This commentary, mirroring in part the language of 28 U.S.C. §994(d), directs the sentencing court's attention to those factors that the court may deem relevant in fashioning a proper sentence. That statute provides:

> **"(d)** The Commission in establishing categories of defendants for use in the guidelines and policy statements governing the imposition of sentences of probation, a fine, or imprisonment, governing the imposition of other authorized sanctions, governing the size of a fine or the length of a term of probation, imprisonment, or supervised release, and governing the conditions of probation, supervised release, or imprisonment, shall consider whether the following matters, among others, with respect to a defendant, have any relevance to the nature, extent, place of service, or other incidents [FN1] of an appropriate sentence, and shall take them into account only to the extent that they do have relevance--
>
> **(1)** age;
> **(2)** education;
> **(3)** vocational skills;
> **(4)** mental and emotional condition to the extent that such condition mitigates the defendant's culpability or to the extent that such condition is otherwise plainly relevant;
> **(5)** physical condition, including drug dependence;
> **(6)** previous employment record;
> **(7)** family ties and responsibilities;
> **(8)** community ties;
> **(9)** role in the offense;
> **(10)** criminal history; and
> **(11)** degree of dependence upon criminal activity for a livelihood." 28 U.S.C.A. §994.

Not only shall the sentencing consider these matters in constructing a sentence that is appropriate, it may also examine each of these matters and others that may be identified by the defendant, the probation office, or the court itself that fall outside of the "heartland" of cases contemplated by the sentencing guidelines. In such circumstances, the court, pursuant to §5K2.0, may grant a downward departure and impose a sentence outside of the otherwise applicable guideline range based upon circumstances "of a kind not adequately taken into

consideration" by the Sentencing Commission. §5K2.0(a)(2) U.S.S.G.  Where a defendant

petitions that Court to consider a factor that it not addressed within the language of one of

the sentencing guidelines, "[a] departure may be warranted in the exceptional case in which

there is present a circumstance that the Commission has not identified in the guidelines but

that nevertheless is relevant to determining the appropriate sentence." §5K2.0(a)(2)(B)

U.S.S.G.

In the following sections of this Memorandum, defendant respectfully provides those

factors he believes are relevant for the Court's consideration in imposing a fair and

reasonable sentence in his case.  Defendant asks that the Court take these factors for

downward departure into account in addition to the motion that has already been filed by the

government.  Defendant also petitions the Court to consider each of these factors outside of

the context of the sentencing guidelines in determining the reasonable sentence it will

impose upon the defendant at the conclusion of the sentencing hearing.

**Issues for Consideration at Ramon Marrero's Sentencing**

**1.    General considerations**

Following the decision of the Supreme Court in *United States v. Booker, supra,* the

Court possesses a new discretionary authority.  As the Second Circuit pointed out in *United*

*States v. Crosby,* 397 F.3d 103 (2d Cir. 2005), a sentencing court is required to consider the

applicable Guidelines and can impose a sentence within the Guideline structure (including

departures) or impose a non-Guideline sentence.  In electing its path toward a sentence, the

Court must consider the factors set forth in 18 U.S.C. §3553(a), including the nature and

circumstances of the offense, the history and characteristics of the defendant, the need for

the sentence to reflect the seriousness of the offense, to promote respect for law and to

8

provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, the need to avoid unwarranted sentencing disparities, and to provide restitution to the victims. *See United States v. Booker, supra.*

After *Booker*, the sentencing court may now consider even those mitigating factors that the *mandatory* guidelines would have prohibited: poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional family background, lack of guidance as a youth, and more. *See, e.g., United States v. Ranum*, 353 F.Supp.2d 984 (E.D.Wisc. 2005); and *United States v. Myers*, 353 F.Supp.2d 1026 (S.D.Iowa 2005). In light of the new interpretation that is allowed district courts after *Booker*, Mr. Marrero respectfully moves the Court to impose a sentence that accounts for all that has been provided above and all that has been included in the Presentence Report prepared by the United States Probation Office.

### 2.    Defendant was peculiarly vulnerable to the commission of the crime due to his complete lack of education.

As the Probation Office points out in the Presentence Report at Paragraph 45 on Page 10, "due to working at a very early age, [Mr. Marrero] never attended school." The defendant contends that Mr. Marrero's utter lack of education and his desire to obtain income to support his family here and in the Dominican Republic laid the foundation for his commission of the crime in this case. As a result, pursuant to §5K2.0 of the sentencing guidelines, a downward departure is warranted in Mr. Marrero's case.

Although defendant was unable to locate recent support for his claim of downward departure on this basis, defendant directs the Court's attention to *United States v. Jagmohan*, 909 F.2d 61, 65 (2d Cir.1990). In *Jagmohan*, the Second Circuit upheld a downward departure where a defendant displayed an unusual lack of sophistication when he bribed a public official with a personal check. *Also see, United States v. Rogers*, 972 F.2d 489, 493 (2d Cir. 1992). While defendant is not submitting that the manner in which he committed the crime in this case was less than sophisticated, his lack of education made Mr. Marrero more vulnerable to those above him -- who clearly were *more sophisticated* -- and were in a position to take full advantage of Mr. Marrero's naivete.

**3.     Defendant will suffer additional punishment in this case as a result of his deportation following his service of the sentence imposed.**

Upon his completion of any sentence imposed by the Court in this case, Ramon Marrero, in all likelihood, will be deported to his native Dominican Republic. There was a time in the not too distant past when a defendant's willingness to stipulate to deportation rewarded him with one or two-level downward departures under §5K2.0 of the sentencing guidelines. *See generally United States v. Montez-Gaviria*, 163 F.3d 697, 704-05 (2d Cir.1998); *United States v. Maria*, 186 F.3d 65, 68 (2d Cir. 1999) More recently, the Second Circuit found that a defendant's potential deportation *alone* not sufficient to warrant such a departure. *See United States v. Tejeda*, 146 F.3d 84,88 (2d Cir.1998); *United States v. Henriquez*, 30 Fed.Appx. 17, 18, 2002 WL 448571, **1 (2d Cir. 2002).

As the defendant recognizes that his eventual deportation *alone* may not be sufficient to support a downward departure, Mr. Marrero asserts that this factor in combination with other factors does warrant the Court's consideration of a departure. Additionally, defendant

10

provides that this factor should be considered by the Court in its determination of an appropriate sentence within or without the sentencing guidelines.

**3.    In light of the sentencing options available to the Court following *United States v. Booker*, pursuant to the requirements of *United States v. Crosby*, defendant petitions the Court to consider imposition of a non-Guidelines sentence.**

Following the decision of the United States Supreme Court in *United States v. Booker, supra,* and this Circuit's decision in *United States v. Crosby, supra,* a sentencing court must first determine the sentence pursuant to the sentencing guidelines, giving due consideration to the factors outlined in 18 U.S.C. §3553(a). After performing its necessary calculations, the district court has greater discretion post-*Booker* to impose the sentence it believes is appropriate in light of "the nature and circumstances of the offenses of conviction, the history and characteristics of the defendant, the seriousness of the offenses, and the need to promote respect for the law, reasons of deterrence and reasons of just punishment." *Cf. United States v. Fuller,* 426 F.3d 556, 560 (2d Cir. 2005); *United States v. Schlisser,* 2006 WL 452005, *3 (2d Cir. 2006) (February 24, 2006).

In arguing for an appropriate sentence to be imposed upon the defendant, Mr. Marrero asks the Court, after reflecting on all of the facts and factors relevant to its sentencing determination in this case, to consider a sentence outside of the otherwise applicable sentencing guidelines. Defendants asserts that a fair and reasonable sentence can still be fashioned in his case without the rigid, mandatory constraints offered by the Guidelines.

11

4.    **Conclusion**

For all of the foregoing reasons, defendant Ramon Marrero respectfully petitions the

Court to impose upon him a fair sentence within the construction of the guidelines as he has

addressed them above or a non-Guidelines sentence after consideration of all relevant and

appropriate factors.

Respectfully submitted,

DEFENDANT, ANTONIO MARRERO

By: _____

John T. Walkley
450 Monroe Turnpike, Suite 101
Monroe, Connecticut 06468
Telephone (203) 261-1911
Facsimile (203) 268-1433
Email: litigater2@aol.com
Fed. Bar No. ct04341

**CERTIFICATION**

It is certified hereby that a copy of the foregoing Sentencing Memorandum has been

dispatched this date, March 2, 2006, to Gordon Hall, Esq., Asst. United States Attorney, via

facsimile and hand-delivered to the Office of the United States Attorney, 157 Church Street,

New Haven, Connecticut 06510.

_____
John T. Walkley